## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEYNEN GUIDER,                     :
                                   :     Civil No. 1:14-CV-331
    Plaintiff                 :
                                   :     (Judge Kane)
    v.                        :
                                   :     (Magistrate Judge Carlson)
COMMONWEALTH OF                    :
PENNSYLVANIA,  et al.,             :
                                   :
    Defendants                :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, which comes before the Court for an initial screening review, is a *pro se, in forma pauperis* action brought by Keynen Guider against the Commonwealth of Pennsylvania, Dauphin County and the City of Harrisburg.  (Doc. 1)  In his *pro se* complaint, Guider recites that he was convicted on his guilty plea of theft offenses in the Court of Common Pleas of Dauphin County in 1999.  (Id.) Guider alleges that the state court erred in its 1999 restitution order in this case, and then compounded that error both in probation revocation proceedings, and in ruling on various post-conviction motions filed by Guider.  (Id.)  Citing these alleged state court errors, Guider asserts that he has been subjected to "malicious prosecution, unlawful confinement, manifest injustice and various United States and Pennsylvania Constitutional Rights violations." (Id.) Guider then sues the state, the county, and the City of Harrisburg, seeking more than $3,500,000, and as much as $38,500,000, in

damages. (Id.) Notably absent, however, from Guider's civil rights lawsuit is any allegation that the plaintiff's state conviction has ever been reversed or set aside in any fashion.

Along with his complaint, Guider has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2) For the reasons set forth below, we will GRANT the motion for leave to proceed *in forma pauperis*, but recommend that this complaint be dismissed without prejudice to the filing of an amended complaint which would endeavor to address the deficiencies cited in this Report and Recommendation.

## II.     Discussion

### A.     Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which  seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the

action . . . fails to state a claim upon which relief may be granted.  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the . . .  well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must then determine whether the facts alleged . . .  are sufficient to  show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the p[arty's] entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629

F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the

requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what

a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and
> plain statement of the grounds for the court's jurisdiction, unless the
> court already has jurisdiction and the claim needs no new jurisdictional
> support; (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and (3) a demand for the relief sought, which
> may include relief in the alternative or different types of relief.
> Thus, a well-pleaded complaint must contain more than mere legal labels and

conclusions.   Rather, a *pro se* plaintiff's complaint must recite factual allegations

which are sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, for the reasons set forth below, Guider's

complaint is fatally flawed in the following respects and should be dismissed.

### B.   Guider May Not Bring a Civil Rights Action for Malicious Prosecution Based Upon What Is Presently a Valid Criminal Conviction and Sentence

At the outset, this complaint fails because it rests on a fatally flawed legal

premise.  At bottom, Guider seeks to bring a civil rights action premised on claims of

malicious prosecution based upon a valid state criminal conviction which has not

otherwise been set aside or overturned.

This he cannot do. Quite the contrary, it is well-settled that an essential element

of a civil rights malicious prosecution claim is that the underlying criminal case must

have been terminated in favor of the civil rights claimant. Therefore, where, as here,

the civil rights plaintiff brings a malicious prosecution or false arrest claim based upon

a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law.

The United States Court of Appeals for the Third Circuit has aptly observed in this

regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483(quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have

terminated in the plaintiff's favor, and the inmate in <u>Heck</u> had not successfully challenged his criminal conviction.  <u>Id</u>.

<u>Hector v. Watt</u>, 235 F.3d 154, 155-156 (3d Cir. 2000).

Thus, "our precedents are clear that § 1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment, but are entitled to relief only if they are innocent of the crime for which they were prosecuted. <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir.2000)." <u>Washington v. Hanshaw</u>, 13-1116, 2014 WL 67887 (3d Cir. Jan. 9, 2014)  Therefore, "a plaintiff claiming malicious prosecution must prove *actual* innocence as an element of his *prima facie* case." <u>Steele v. City of Erie</u>, 113 F. App'x 456, 459 (3d Cir. 2004). In this case it is evident from Guider's complaint that his prior state criminal prosecution did not terminate favorably for him, since he was convicted in this state case and served a sentence as a result of this conviction, and subsequent parole and probation revocations.  Indeed, Guider recites that he pleaded guilty to this offense, and does not plausibly allege that he was actually innocent of this crime.  Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor." <u>id</u>., the immutable fact of Guider's guilty plea conviction presently defeats any federal civil rights claims based upon false arrest or malicious prosecution in this state case, and compels dismissal of these claims.  In short, this complaint is based upon the fundamentally flawed legal premise that Guider

can sue the state for malicious prosecution even though he stands convicted on his own guilty plea of the crimes charged against him.  Since this premise is simply incorrect, Guider's complaint fails as a matter of law.

C.    **Guider may Not Maintain a Claim Against the Defendants Named in This Lawsuit**

Furthermore, in his complaint Guider sues the state, the county and the City of Harrisburg because of alleged errors committed by state court trial judges in his state criminal case.  Thus the gist of Guider's complaint is that the state, county, and city are all somehow vicariously liable for the judges' rulings in these cases.

This claim fails for two reasons.  First, to the extent that the plaintiff seeks in his complaint to hold these judicial officers, and the city and county where they preside,  personally liable for civil rights violations, it is well-settled that these judges are individually cloaked with immunity from liability.  The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities.  In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n.20  (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d

Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.  In this regard, the broad scope of this immunity was clearly articulated by this Court in the following terms:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)).  "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted).  Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007).  Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011).

Since these judges are immune from any form of civil liability, it follows that the city and  county where they preside cannot be held vicariously liable for judicial acts by judges, acts which cannot give rise to direct civil liability for these judicial officers.

Furthermore, Guider errs when he suggest that the actions of these judges are somehow legally attributable to the county or city.  These state courts are defined by statute as institutions of state government.  See, e.g., Walters v. Washington County,

No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); <u>Van Tassel v. Lawrence County Domestics Relations Section</u>, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009).   Therefore, individual cities and counties cannot be held liable for the actions of state court judges, who are part of the unified state court system.

Since the courts are institutions of state government, this complaint further runs afoul of basic constitutional rules limiting lawsuits against state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI.   By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies.   Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment.   <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.   <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54 (1996).   The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are

integral parts of Pennsylvania's unitary court system.  These court officers and agencies enjoy immunity from lawsuit under the Eleventh Amendment.  See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009).   Thus, it is well-settled that "Pennsylvania's judicial districts, . . . , are entitled to Eleventh Amendment immunity. Benn, 426 F.3d at 241." Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008).  See Perez v. Borough of Berwick, 507 F. App'x 186, 189 (3d Cir. 2012)(same).  Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court.  These longstanding, constitutionally-grounded immunities also directly apply here and prevent the plaintiff from maintaining this civil action for damages against the defendants he has named in his complaint, all of whom should be dismissed from this action.

### D.   Guider May Not Bring Damages Claims Under the Pennsylvania Constitution

Further, to the extent that the plaintiff seeks damages under the Pennsylvania constitution, it must be noted that:

Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional violation.   Moreover, the question of whether the Pennsylvania Constitution provides a cause of action for damages remains unanswered.  Underwood v. Beaver Cnty. C.Y.S., Civ. A. No. 03-1475, 2005 U.S. Dist. LEXIS 23012, at *7 (W.D.Pa. Oct. 7, 2005). Nevertheless, a majority of other district courts in this circuit that have decided the issue have concluded that money damages are not available for claims under the Pennsylvania Constitution.  See Ryan v. General Machine Prods., 227 F.Supp.2d 585, 595 (E.D.Pa.2003) (stating that federal courts in the Court of Appeals for the Third Circuit have concluded that there is no right to money damages under the Pennsylvania Constitution); see also Douris v. Schweiker, 229 F.Supp.2d 391, 405 (E.D.Pa.2002); Lees v. West Greene Sch. Dist., 632 F.Supp. 1327, 1335 (W.D.Pa.1986).  Although monetary relief is unavailable, "other remedies, such as declaratory or injunctive relief ... are ... remedies under the Pennsylvania Constitution." Jones v. City of Philadelphia, 890 A.2d 1188, 1215-16 (Pa.Commw.Ct.2006) (discussing the lack of a cause of action for damages under the Pennsylvania Constitution and declining, "without benefit of legislative action," to create such a cause of action.).

O'Hara v. Hanley, No. 08-1393,  2009 WL 2043490, 9 (W.D.Pa. July 8, 2009).

In sum, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mtn. Charter School v. Pocono Mtn. School Dist., 442 F.App'x 681, 687 (3d Cir. 2011).  Therefore, the state constitution simply may not provide legal footing for any damages claims like those made by the plaintiff in this case, and this claim should also be dismissed.

### E.     The Plaintiff's Claim for A Specific Amount of Unliquidated Damages is Improper

Finally, we note that the demand for specified compensatory damages from the defendants in the amount of more than $3,500,000, and as much as $38,500,000, is inappropriate.  Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter.  Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance.  Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984).  In this case, the plaintiff's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that:  "The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P. 8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.*   The short plain statement of jurisdiction, required by Fed.R. Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other."  Local Rule 8.1 (emphasis added).  Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, it is further recommended that this specific dollar claim be stricken from the complaint.

### F.    The Complaint Should be Dismissed Without Prejudice

We recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, Guider has not alleged facts that would state a claim upon which relief may be granted, and it appears that he may be unable to do so.  Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Guider attempting to amend this federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

### III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) is GRANTED , but  IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted, but that the dismissal of this action be without prejudice to any effort by the plaintiff to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided that the plaintiff acts within 20 days of any dismissal order.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of February, 2014.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
